1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   FELIX SANCHEZ, JR.,              No. 2:19-cv-01086-WBS-DB

13            Plaintiff,

14       v.                          MEMORANDUM AND ORDER RE:
                                     MOTION FOR SUMMARY JUDGMENT
15   CITY OF ROSEVILE; ROSEVILLE
     POLICE DEPARTMENT; DANIEL
16   MEDINA; CURTIS WATKINS; ADARIS
     WILSON; BRANDON FERNANDEZ; DOES
17   1 through 3, inclusive,

18            Defendants.

19

20                          ----oo0oo----

21          Plaintiff Felix Sanchez, Jr. ("plaintiff") brought this

22   action against the City of Roseville ("Roseville"); the Roseville

23   Police Department; Officers Daniel Medina, Curtis Watkins, and

24   Adaris Wilson; Sergeant Brandon Fernandez; and DOES 1-3 seeking

25   damages against defendants under 42 U.S.C. § 1983 for violation

26   of the Fourth Amendment and malicious prosecution, and for

27   violation of the Tom Bane Civil Rights Act, California Civil Code

28   § 52.1(c).  Before the court is the Motion for Summary Judgment

                                  1

brought by the City of Roseville, Roseville Police Department,

Officers Daniel Medina, Curtis Watkins, Adaris Wilson, and

Sergeant Brandon Fernandez.  (Defs.' Mot. for Summ. J.) (Docket

No. 11.)

I.   Factual and Procedural Background[1]

---

[1]   Plaintiff makes several evidentiary objections to
defendants' Separate Statement of Undisputed Facts on the grounds
that the statements are undisputed but irrelevant or vague.  (See
Pl.'s Resp. to Statement of Undisputed Facts) (Docket No. 14.)
"[O]bjections to evidence on the ground that it is irrelevant,
speculative, and/or argumentative, or that it constitutes an
improper legal conclusion are all duplicative of the summary
judgment standard itself, yet attorneys insist on using
evidentiary objections as a vehicle for raising this point.  A
court can award summary judgment only when there is no genuine
dispute of material fact.  It cannot rely on irrelevant facts,
and thus relevance objections are redundant."  Burch v. Regents
of Univ. of Cal., 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006.)

Additionally, the Ninth Circuit has long held that "to
survive summary judgment, a party does not necessarily have to
produce evidence in a form that would be admissible at trial, as
long as the party satisfies the requirements of Federal Rule of
Civil Procedure 56."  Fraser v. Goodale, 342 F.3d 1032, 1036-37
(9th Cir. 2003.)  "As a practical matter, the court finds this
entire exercise of considering evidentiary objections on a motion
for summary judgment to be futile and counterproductive."  See
Burch, 433 F. Supp. 2d at 1122.  Accordingly, the court denies
these evidentiary objections at this time.

Defendants make three evidentiary objections to the exhibits
submitted by plaintiff in opposition to defendants' motion for
summary judgment.  They first argue that plaintiff's citation to
the printout from the Roseville Police Department website lacks
foundation and is not properly authenticated.  (See Pl.'s Opp'n.
to Mot. for Summ. J., Ex. 1. (Docket No. 12).)  The printout is
undated, and plaintiff cites no evidence that the Roseville
Police Department had the capabilities described on the page at
the time of the subject incident in May 2018.  The Ninth Circuit
has "repeatedly held that 'documents which have not had a proper
foundation laid to authenticate them cannot support [or defend
against] a motion for summary judgment.'" Beyene v. Coleman Sec.
Servs., Inc., 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting Canada
v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987)).
Accordingly, the court will sustain this evidentiary objection.

Defendants next object to the deposition testimony of
Lieutenant Mancini that Officer Medina was released from
probation because he struggled to assess situations as they
evolved.  (See Pl.'s Opp'n. to Mot. for Summ. J., Ex. 14 Dep. Tr.

1    On May 15, 2018, Roseville Police Department ("RPD")

2   Officers Medina, Watkins, and Wilson were on patrol in the City

3   of Roseville.  (See Undisputed Material Fact ("UMF") 1, Docket

4   No. 11-2).)  At approximately 11:10 P.M., an anonymous caller,

5   later confirmed to be plaintiff's niece Olivia Sanchez, called

6   the City of Roseville's non-emergency police dispatch line and

7   stated that she wished to report a truck on her street.  (See UMF

8   8.)  She said that "a couple of guys just got home.  Honestly, by

9   the way that they kind of got out of the truck, I would assume

10  that they are drunk, and the truck is parked the wrong way."

11  (Id.)  She later testified in a deposition that prior to her

12  call, she happened to be driving through an intersection down the

13  street from plaintiff's residence when she saw the truck parked

14  in front of plaintiff's residence and the occupants get out of

15  the vehicle.  (See UMF 10.)

16    At approximately 11:12 P.M., RPD dispatch radioed to

17  the officers that there was a reported potential violation of

18  California Vehicle Code § 23152, driving under the influence.

19  (See UMF 12-14.)  Officers Watkins and Medina arrived at

20  approximately 11:17 P.M. and located an unoccupied white Chevy

21  Silverado pick-up truck parked on the left side of the road with

22  _____

23  of Lt. Phil Mancini at 24:10-25:20.)  Defendants contend this is
    inadmissible character evidence because the subject incident was
24  not one of the reasons why Officer Medina was released.  The
    defendants also object to the Placer County Jail Records which
25  plaintiff attempts to use to demonstrate his claim that the
    officers did not have reasonable suspicion that plaintiff was
26  intoxicated.  (See Pl.'s Opp'n. to Mot. for Summ. J., Ex. 2 at
    16-25.)  Because the court does not rely on these documents in
27  resolving the instant motion, the court need not decide these
    evidentiary objections at this time.

28

its driver's side tires closest to the curb in front of the residence at 309 Lorraine Avenue (later determined to be plaintiff's residence). (See UMF 18.) Officer Wilson arrived at the residence at approximately 11:20 P.M. (See UMF 20.) The vehicle was unoccupied and there was nobody in the nearby area. (See UMF 21.) Officers Watkins and Medina discussed the situation and then Officer Medina started writing a parking citation for a violation of Roseville Municipal Code section 11.20.050 which provides: "No person shall stop, park or leave standing a vehicle on the left-hand side of a two-way street." (See UMF 22.)

When Officer Medina was preparing a citation, plaintiff walked down the driveway of the residence at 309 Lorraine Avenue toward them. (See UMF 24.) Plaintiff suspected that the officers were writing a ticket for the truck. (See UMF 26.) Plaintiff and the officers then had a conversation. (See UMF 27.) Plaintiff informed the officers that the truck belonged to his brother, Steve Sanchez, but that he had driven the truck and parked it where it was located. (See UMF 28.) Officer Medina asked plaintiff if he had been drinking. (See UMF 29.) Plaintiff stated that he drank three beers earlier that evening. (See UMF 30.) Officer Medina asked plaintiff if he had anything to drink since returning home and plaintiff refused to answer the question. (See UMF 31.) Plaintiff stated that he could get someone to move the truck or they could ticket it. (See UMF 33.) Plaintiff stated that he was going back inside, turned around, and began walking toward his residence. (See UMF 34.)

As plaintiff turned and started walking toward his

4

residence, the officers said something to the effect of "Come here" and "You can't just leave." (See UMF 35.)  Plaintiff took approximately two more steps towards his home.  (See UMF 36.) Officer Medina grasped plaintiff on the left while Officer Wilson grasped plaintiff on the right to stop him from continuing to walk away from them.  (See UMF 37.)  Plaintiff is approximately 5'11" tall and weighs 250 pounds.  (See UMF 25.)  Plaintiff flexed his arms and tensed up.[2]  (See UMF 38.)  Officer Wilson used a "leg sweep" maneuver, putting his leg behind plaintiff's legs and pulling plaintiff backward over his leg, to take plaintiff to the ground.  (See UMF 39.)  The officers took plaintiff to the ground on his back and then rolled plaintiff onto his stomach.  (See UMF 40.)  Plaintiff's arms were underneath his body when he was rolled onto his stomach.  (See UMF 41.)  The officers yelled at plaintiff to stop resisting. (See UMF 42.)[3]  After the officers handcuffed plaintiff, they picked him up and asked him if he was injured, to which he said no. (See UMF 44.)  The officers then walked plaintiff to Officer Wilson's patrol vehicle and put him in the back seat.  (See UMF 45.)

Officer Watkins requested for a patrol supervisor,

[2]    Plaintiff contends that he did not actively resist but rather was being pulled backwards down his driveway and his reactions were an involuntary movement to regain his balance to keep from falling.  (See Pl.'s Resp. to Statement of Undisputed Facts, Fact 38.)

[3]    Plaintiff contends that he was not resisting, but was unable to move his arms from under his body after the officers rolled him over onto his arms and that he told the officers, "I'm not resisting, pull my f***ing arms!"  (See Pl.'s Resp. to Statement of Undisputed Facts, Fact 37.)

1  Sergeant Fernandez, to respond to the scene.  (See UMF 46.)

2  Sergeant Fernandez spoke to plaintiff while plaintiff was in the

3  back of Officer Wilson's patrol vehicle.  (See UMF 48.)  Sergeant

4  Fernandez read plaintiff his Miranda Rights and plaintiff

5  indicated that he understood them.  (See UMF 49-50.)  Sergeant

6  Fernandez informed plaintiff that the vehicle was parked the

7  wrong way on the street to which plaintiff responded: "I know."

8  (UMF 51.)  Plaintiff told Sergeant Fernandez that he did not want

9  to re-park the vehicle because he was concerned it could subject

10  him to being arrested for driving under the influence ("DUI").

11  (See UMF 52.)  Plaintiff explained to Sergeant Fernandez that he

12  had been at a concert for the Downtown Tuesday Night in

13  Roseville, went and got some fast food, had a few beers, and then

14  his wife looked out at the house and noticed the police were

15  there.  (See UMF 53.)  Plaintiff stated that he "didn't want to

16  get in the truck and drive because, you know, like I said, I'm

17  not, like, totally wasted but- you know, legally drunk, but I

18  don't wanna take that chance because, you know, I have a

19  commercial license."  (Id.)

20        Plaintiff told Sergeant Fernandez that he had told the

21  other officers that he had driven the vehicle earlier and parked

22  it where it was parked.  (See UMF 54.)  Plaintiff told Sergeant

23  Fernandez that he said to the officers "I'm going back inside" to

24  which they responded "Well, come here. You're not-- you can't

25  just leave . . ." to which plaintiff replied "Well, I'm going

26  back inside."  (See UMF 55.)  Sergeant Fernandez told Plaintiff:

27  "So you're -- you're intoxicated at this point" and plaintiff

28  responded: "I said I've had -- I'm not denying that I didn't have

                                    6

a few beers you know?  But like I said, with a commercial
license, I'm not gonna get in a truck and give them the
opportunity to say, 'Oh, now you're driving?'"  (See UMF 56.)
Sergeant Fernandez told plaintiff that he thought that the main
reason plaintiff was in the back of the police car was because
the other officers wanted plaintiff to stop.  (See UMF 57.)
Sergeant Fernandez told plaintiff that the other officers "gave
you a lawful order not to go back inside and you tried to go back
inside and that's -- could you -- could we agree on that?"  (Id.)
Plaintiff responded: "Yeah, they said, 'Come here.' I said -- I'm
in the driveway, so you know, 'Okay.' I'm -- I'm home . . . . I'm
not bothering anybody, just trying to find out.  And, you know, I
don't know why they didn't just say why they were here."  (See
UMF 58.)  Sergeant Fernandez said: "Okay.  So, you tried to go
back inside, they -- had to physically stop you from going bac
inside. Is that what happened?"  (See UMF 59.)  Plaintiff
replied: "I was in my driveway."  (See UMF 60.)  Later, Sergeant
Fernandez asked plaintiff whether he was injured or needed
medical attention and plaintiff stated that he would not go to
the doctor for this.  (See UMF 61-62.)  Plaintiff also told
Sergeant Fernandez that when the officers grasped him, he "tensed
up."  (See UMF 63.)

Plaintiff was arrested and transported to jail by
Officer Wilson for violating California Penal Code Section
148(a)(1).  (See UMF 69.) California Penal Code Section 148(a)(1)
states that: "Every person who willfully resists, delays, or
obstructs any public officer, peace officer. . . in the discharge
or attempt to discharge any duty of his or her office or

employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." See Cal. Pen. Code § 148(a)(1).  Plaintiff posted bail the next morning and was released from jail. (See UMF 70.)  The Placer County District Attorney's Office filed a criminal complaint against plaintiff charging him with violating California Penal Code § 148(a)(1). (See UMF 70.)  Plaintiff filed a Motion to Suppress.  (See UMF 72.)  The Court granted the Motion to Suppress and the District Attorney's office dismissed plaintiff's criminal case.  (See UMF 74-75.)

II.  Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.  If

the moving party has properly supported its motion, the burden shifts to the non-moving to set forth specific facts to show that there is a genuine issue for trial.  See id. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion.  See id.

    A.   Claim Under 42 U.S.C. § 1983 for Violation of Fourth Amendment

Plaintiff's first claim for relief is alleged against Defendant Officers Medina, Watkins, Wilson and Sergeant Fernandez for a violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983.  (See Compl. at ¶¶ 9-28.) (Docket No. 1.) Plaintiff alleges that he was (1) illegally detained, (2) subjected to excessive and unreasonable force, and (3) illegally arrested and charged with violating California Penal Code § 148. (Id.)  The court will examine each allegation in turn.

    1.   Unlawful Detention

Defendants argue that it was objectively reasonable to detain plaintiff under the totality of the circumstances because they had a reasonable suspicion that plaintiff was driving under the influence of alcohol.  (See Defs.' Mot. for Summ. J. at 9.) Plaintiff disagrees and contends that the officers lacked reasonable suspicion, supported by particularized and objective facts, that the truck was being operated by an impaired driver.

1    (See Pl.'s Opp'n. to Mot. for Summ. J. at 15.)

2          The Fourth Amendment prohibits unreasonable searches

3    and seizures, and its protections extend to brief investigatory

4    stops of persons or vehicles that fall short of traditional

5    arrest.  See United States v. Arvizu, 534 U.S. 266, 273 (2002).

6    Officers may briefly stop and detain someone if there is a

7    reasonable suspicion to believe that criminal activity may be

8    afoot.  Id. (citing Terry v. Ohio, 39 U.S. 1, 9 (1968).)  To

9    determine whether officers had reasonable suspicion, courts must

10   look at the totality of the circumstances of each case to see

11   whether the detaining officer had a particularized and objective

12   basis for suspecting legal wrongdoing.  See Arvizu, 534 U.S. at

13   273.

14         Although an officer's reliance on a mere hunch is

15   insufficient to justify a stop, the likelihood of criminal

16   activity need not rise to the level required for probable cause,

17   and it falls considerably short of satisfying a preponderance of

18   the evidence standard.  Id. at 274 (internal citations omitted).

19   The facts which establish reasonable suspicion need not be

20   inconsistent with innocence.  See United States v. Tiong, 224

21   F.3d 1136 (9th Cir. 2000).

22         Defendants contend that they had reasonable suspicion

23   to detain plaintiff for driving under the influence in violation

24   of California Vehicle Code § 23152, which provides that: "(a) It

25   is unlawful for a person who is under the influence of any

26   alcoholic beverage to drive a vehicle; and (b) It is unlawful for

27   a person who has 0.08 percent or more, by weight, of alcohol in

28   his or her blood to drive a vehicle."  See Cal. Vehicle Code §

23152 (a–b).  However, when the officers arrived at plaintiff's residence, the vehicle was unoccupied and no one was in the area. (See UMF 21.)  The only information they had was that a white Chevy Silverado was parked the wrong way and that two males got out of the vehicle and looked as though they had been drinking. (See UMF 14.)  The defendants were not told that the reporting party observed the truck being operated or when the truck was operated.  (See Pl.'s Opp'n. to Mot. for Summ. J. at 15.) Officer Watkins admitted that there could be any number of explanations as to why the truck was parked the wrong direction and the position of the truck did not necessarily indicate that the driver was drunk or was intending to leave soon.  (See Pl.'s Opp'n. to Mot. for Summ. J. at Ex. 10, Dep. Tr. of Curtis Watkins at 24:17–23.)

Plaintiff did inform the defendants that he had consumed three beers earlier in the evening.  (See UMF 30.) However, defendants had no way of knowing how long it had been since plaintiff had consumed the beers or whether plaintiff had consumed alcohol since returning to his house.  Even assuming that the defendants could actually smell the aroma of alcohol on the plaintiff during that brief encounter outside from 5-10 feet away, the smell of alcohol is merely an indication that the person consumed alcohol but does not indicate how much alcohol was consumed or when.  (See Pl.'s Opp'n. to Mot. for Summ. J. at 16.)  Considering the evidence in the light most favorable to plaintiff, the court concludes that there is a genuine issue of material fact as to whether the officers had reasonable suspicion to detain the plaintiff for a suspected DUI.

1            2.   Unreasonable Use of Force

2            The Fourth Amendment permits law enforcement officers

3    to use only such force to effect an arrest as is "objectively

4    reasonable" under the circumstances.  See Headwaters Forest

5    Defense v. Cty. of Humboldt, 276 F.3d 1125, 1130 (9th Cir.

6    2002)(quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  The

7    essence of the Graham objective reasonableness analysis is that

8    the force which was applied must be balanced against the need for

9    that force.  See id. (internal citations omitted.)

10           In assessing the reasonableness of the use of force,

11   the court should give "careful attention to the facts and

12   circumstances of each particular case, including the severity of

13   the crime at issue, whether the suspect poses an immediate threat

14   to the safety of the officers or others, and whether he is

15   actively resisting arrest or attempting to evade arrest by

16   flight."  Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010)

17   (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)).  The

18   "reasonableness" of a particular use of force must be judged from

19   the perspective of a reasonable officer on the scene, rather than

20   with the 20/20 vision of hindsight.  See Graham, 490 U.S. at 396.

21           Viewing the evidence in the light most favorable to the

22   plaintiff, the court concludes that there is a genuine issue of

23   material fact as to whether the amount of force used was

24   reasonable under the circumstances.  The force which was applied

25   must be balanced against the need for that force.  See Headwaters

26   Forest Defense, 276 F.3d at 1130.  By the time they decided to

27   use force to detain plaintiff defendants did not have reasonable

28   grounds to arrest him for DUI.  Accordingly, the potential crime

at issue at that time was only a minor municipal parking violation.  With regard to the amount of force used, Officer Medina testified that he was trained to expect normal reactions to being pushed and pulled, (see Pl.'s Opp'n. to Mot. for Summ. J. at Ex. 9, Dep. Tr. of Daniel Medina at 84:23–85:21), and affirmed that the officers were pulling plaintiff backwards down the driveway. (Id.)

Defendants contend that given the plaintiff's size, standing 5'11" tall and weighing 250 pounds, it was objectively reasonable for the officers to move plaintiff off of his feet via a leg sweep maneuver and onto the ground where he could be handcuffed and detained without a further altercation.  (See Defs.' Mot. for Summ. J. at 13.)  However, there is no indication that the plaintiff posed an immediate threat to the safety of the officers apart from his size and the fact that he tensed his arms, as he could be expected to do, while being pulled backwards down his driveway.

### 3.   Unlawful Arrest

Defendants contend that they had probable cause to arrest plaintiff for violating California Penal Code § 148. (See Defs.' Mot. for Summ. J. at 15.)  "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime."  See Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1097–98 (9th Cir. 2013).  "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even

13

usefully, reduced to a neat set of legal rules.  It requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity."  See District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (internal quotations and citations omitted).

California Penal Code § 148(a)(1) provides that "every person who willfully resists, delays, or obstructs any public officer. . . in the discharge or attempt to discharge any duty of his or her office of employment. . . shall be punished . . ." Plaintiff took approximately two steps after he heard defendants tell him to stop.  (See UMF 36.)  However, California Penal Code § 148 does not criminalize a person's failure to respond with alacrity to police orders.  See People v. Quiroga, 16 Cal. App. 4th 961 (1st Dist. June 22, 1993) (holding that plaintiff's refusal to stand up despite numerous commands by a police officer did not violate California Penal Code § 148).

In Lassiter v. City of Bremerton, 556 F.3d 1049, 1053, (9th Cir. 2009), the Ninth Circuit held that there was probable cause to arrest the plaintiff for obstruction after the plaintiff grabbed a police officer's arm, because his conduct had the practical effect of precluding the officers from securing the scene and investigating a possible assault.  See id. at 1053.  In contrast, the plaintiff here merely flexed his arms and "tensed up" when Officer Medina and Officer Wilson grabbed him and began pulling him backwards on the driveway.  (See UMF 38.)  Officer Medina also admitted that plaintiff might have been confused about what was going on because of the parking ticket situation, lack of discussions about a DUI investigation, and failure to

14

1  tell plaintiff that he was legally detained and not free to leave

2  until seconds before the officers grabbed him.  (<u>See</u> Pl.'s Opp'n.

3  to Mot. for Summ. J. at Ex. 9, Dep. Tr. of Daniel Medina at 64:1–

4  65:2.)

5          After reviewing all the evidence in the record, the

6  court concludes that there is a genuine issue of material fact as

7  to whether the defendant officers had probable cause to arrest

8  plaintiff for violation of California Penal Code § 148.

9       B.   <u>Qualified Immunity</u>

10          Having found disputed issues of fact on the question of

11  whether defendants violated plaintiff's Fourth Amendment rights,

12  the court must now determine whether defendants nonetheless are

13  entitled to qualified immunity for those violations.  The

14  qualified immunity defense is available to defendants if

15  plaintiff's Fourth Amendment rights at issue in this case were

16  not clearly established at the time that defendants committed the

17  violation.  <u>See</u> <u>Shafer v. Cty. of Santa Barbara</u>, 868 F.3d 1110,

18  1117 (9th Cir. 2017).

19          The doctrine of qualified immunity "protects government

20  officials 'from liability for civil damages insofar as their

21  conduct does not violate clearly established statutory or

22  constitutional rights of which a reasonable person would have

23  known.'"  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)(citing

24  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).)  To determine

25  whether an officer is entitled to qualified immunity, the court

26  considers: (1) whether there has been a violation of a

27  constitutional right; and (2) whether the defendants' conduct

28  violated "clearly established" federal law.  <u>Sharp v. Cty. of</u>

1  Orange, 871 F.3d 901, 909 (9th Cir. 2016) (citing Kirkpatrick v.

2  Cty. Of Washoe, 843 F.3d 784, 788 (9th Cir. 2016)).

3          Qualified immunity is a question of law to be decided

4  by the court.  See Hunter v. Bryant, 502 U.S. 224, 228 (2009).

5  Qualified immunity attaches when an official's conduct does not

6  violate clearly established statutory or constitutional rights of

7  which a reasonable person would have known.  See Kisela v.

8  Hughes, 138 S. Ct. 1148, 1152 (2018) (internal citations

9  omitted).  "To be clearly established, a legal principle must

10  have a sufficiently clear foundation in then-existing precedent."

11  See Wesby, 138 S. Ct. at 589.  The rule must be settled law,

12  which means it is dictated by "controlling authority" or a

13  "robust consensus of cases of persuasive authority."  Id. at 589–

14  90 (internal citations omitted).  It is not enough that the rule

15  is suggested by then-existing precedent; the precedent must be

16  clear enough that every reasonable official would interpret it to

17  establish the particular rule the plaintiff seeks to apply.  See

18  id. at 590.  In other words, qualified immunity protects all but

19  the plainly incompetent or those who knowingly violate the law.

20  See Kisela, 138 S. Ct. at 1152.  It is the plaintiff who "bears

21  the burden of showing that the rights allegedly violated were

22  'clearly established.'"  See Shafer, 868 F.3d at 1118 (internal

23  citations omitted).

24          1.   Sergeant Fernandez

25          Sergeant Fernandez was not present or involved in the

26  alleged constitutional violations of unlawful detention and

27  excessive use of force.  (See Defs.' Mot. for Summ. J. at 16.)

28  In regard to the allegedly unlawful arrest, Sergeant Fernandez

was told by the other officers that plaintiff "refused to obey lawful orders and struggled when officers attempted to detain him." (See Pl.'s Opp'n. to Mot. for Summ. J., Ex. 2 at 12.) Plaintiff told Sergeant Fernandez that he continued to walk away from the officers after he heard them say "come here" and "you can't just leave." (See UMF 55, 57-60.) He also informed Sergeant Fernandez that he "tensed up" when the officers grabbed him. (See UMF 63.) Plaintiff contends that Sergeant Fernandez should have investigated whether his subordinates were telling him the truth when he arrived on scene and that he should have intervened to prevent plaintiff's arrest. (See Pl.'s Opp'n to Mot. for Summ. J. at 32-34.)

However, as plaintiff's counsel appeared to concede at oral argument, there is no clearly established law which would place a police sergeant on notice that he has a constitutional obligation to ascertain whether his subordinates are telling him the truth on the scene before making an arrest. Accordingly, the court concludes that Sergeant Fernandez is entitled to qualified immunity and will grant his summary judgment on the claims against him.

2.   Unlawful Detention

Plaintiff contends that defendants violated clearly established law by detaining him to investigate a potential DUI. (See Pl.'s Opp'n. to Mot. for Summ. J. at 15.) The strongest case plaintiff cites in support of his contention is United States v. Grigg, 498 F.3d 1070, 1079-81 (9th Cir. 2007).[4] The

_____

[4]    Plaintiff cites various other cases, but none are on point here. United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013), and Rodriguez v. United States, 575 U.S. 348,

17

1   Ninth Circuit has long held that the Fourth Amendment constrains

2   officers who conduct stops to investigate completed misdemeanors.

3   See United States v. Grigg, 498 F.3d 1070, 1079-81 (9th Cir.

4   2007).   In United States v. Grigg, police officers pulled over

5   the suspect's vehicle to investigate a citizen complaint that the

6   suspect had been playing his car stereo at an excessive volume

7   earlier in the day.   Id. at 1072.   The Grigg court concluded that

8   this was insufficient to justify the officer's detention of the

9   suspect.   Id. at 1081.

10      Defendants contend that Grigg did not put the officers

11  here on notice that their detention of Plaintiff to investigate a

12  DUI was unlawful.   (See Defs.' Reply in Supp. of Mot. for Summ.

13  J. at 25.) (Docket No. 19.)   The court agrees.   First, it was not

14  necessarily clear that this DUI was a misdemeanor.   Under certain

15  conditions a fourth DUI may be charged as a felony.   See Cal.

16  Veh. Code § 23550.   Because defendants had not identified

17  plaintiff before they encountered him, they had no way of knowing

18  whether he had prior DUI convictions.

19      Second, even assuming the officers would have known

20  350-51 (2015), focus on investigatory stops of vehicles.   Johnson
    v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1175 (9th Cir.
21  2019), involved a shooting by a police officer on a BART train
    and where the court held that there was no likelihood of ongoing
22  or repeated danger or escalation when the officer was
    investigating a completed fight on a BART train and came upon a
23  group of black men merely talking amongst each other.   See id. at
    1175-76.   In United States v. Hensley, 469 U.S.  221, 233 (1985),
24  the Supreme Court held that police officers had reasonable
    suspicion to perform an investigatory stop of defendant based on
25  a "wanted flyer" by another police department and were entitled
    to seize evidence discovered in plain view in course of their
26  lawful stop of defendant's vehicle.   Nothing in those cases would
    have placed defendants here on notice that they were not entitled
27  to detain plaintiff to investigate a DUI under the circumstances
    of this case.
28

18

1    they were investigating a misdemeanor DUI, Grigg instructs that

2    in determining whether the Fourth Amendment permits an officer to

3    detain a suspected misdemeanant, the court must "consider the

4    nature of the misdemeanor offense in question, with particular

5    attention to the potential for ongoing or repeated danger (e.g.

6    drunken and/or reckless driving), and any risk of escalation

7    (e.g., disorderly conduct, assault, domestic violence)." See

8    Grigg, 498 F.3d at 1079-81.  Because Grigg specifically states

9    that the officers should pay attention to the potential for

10   ongoing or repeated danger, and highlights reckless and drunken

11   driving as activities that would lead to ongoing danger, Grigg

12   did not put the defendants on notice that their detention of

13   plaintiff to investigate a DUI was unlawful.

14         Because plaintiff fails to identify sufficiently

15   specific constitutional precedents to alert defendants that their

16   particular conduct was unlawful, defendants are entitled to

17   qualified immunity for the alleged unlawful detention of

18   plaintiff.  Accordingly, the court will grant defendants summary

19   judgment on this claim.

20              3.   Unreasonable Use of Force

21         The court next examines whether it was clearly

22   established that the use of force exerted by the officers in this

23   case was unreasonable.  Plaintiff contends that he was subjected

24   to excessive and unreasonable force by Officers Medina, Wilson,

25   and Watkins.  (See Pl.'s Opp'n. to Mot. for Summ. J. at 26.)

26   Defendants argue that they did not violate clearly established

27   law when Officer Medina and Officer Wilson grasped plaintiff to

28   stop him from leaving the scene and used a leg sweep to take

plaintiff to the ground after plaintiff resisted.  (See Defs.'
Reply in Supp. of Mot. for Summ. J. at 26.)

As a preliminary matter, plaintiff contends that he was
"gang tackled" at various points in his opposition, (see Pl.'s
Opp'n to Mot. for Summ. J. at 26), and at oral argument.
However, there is simply no evidence that plaintiff was "gang
tackled" or even tackled at all.  The only evidence that
plaintiff cites to justify his statement that he was "gang
tackled" is that Officers Medina, Wilson, and Watkins ended up
going to the ground too.  (See Pl.'s Resp. to Statement of
Undisputed Facts, Fact 40.)  However, plaintiff's own description
of the event in the statement of undisputed facts belies his
contention that he was gang tackled; he states that Officer
Wilson grabbed plaintiff's right arm and pulled him further down
the driveway to do a leg sweep to kick plaintiff's legs out from
under him, causing plaintiff to fall onto his back on the
concrete driveway. (See Pl.'s Resp. to Statement of Undisputed
Facts, Fact 37.)  Nowhere in plaintiff's description of the
events does a "gang tackle" occur.  (See id.)

The reason attempts to categorize the force used as a
"gang tackle" because in Blankenhorn v. City of Orange, 485 F.3d
463, 481 (9th Cir. 2007), the Ninth Circuit held that a "gang
tackle" was an unreasonable use of force under the circumstances
of that case.  See id.  However, as the Ninth Circuit made clear
in Blankenhorn, "neither tackling nor punching a suspect to make
an arrest necessarily constitutes excessive force."  See id. at
477.  Rather, the Ninth Circuit held that "the clear principle
that force is only justified where there is a need for force

20

1  would have placed a prudent officer on notice that gang-tackling

2  without first attempting a less violent means of arresting a

3  relatively calm trespass subject -- especially one who had been

4  cooperative in the past and was at the moment not actively

5  resisting arrest -- was a violation of that person's Fourth

6  Amendment rights."  See Blankenhorn, 485 F.3d at 481.

7          The Supreme Court has cautioned that "use of excessive

8  force is an area of the law in which the result depends very much

9  on the facts of each case, and police officers are entitled to

10  qualified immunity unless existing precedent 'squarely governs'

11  the specific facts at issue."  See Kisela, 138 S. Ct. at 1153.

12  The facts of Blankenhorn, which dealt with a trespass subject who

13  had previously cooperated with police and was not actively

14  resisting arrest, are readily distinguishable from the facts here

15  and could not have placed defendants on notice that their conduct

16  was illegal.

17          The other cases cited by plaintiff similarly do not

18  support a finding that the officers violated clearly established

19  law when they grasped his arms to stop him from leaving and used

20  a leg sweep to take him to the ground after he tensed up his

21  arms.[5]  Plaintiff attempts to rely on Tekle v. United States, 511

22          [5]   The majority of the cases cited by plaintiff are
applications of state law.  See Cal. Pen. Code § 242; See
23  Judicial Council of California: Civil Jury Instructions ("CACI"),
Rule 1305, Battery by Peace Officer (2020); Edson v. City of
24  Anaheim, 63 Cal. App. 4th 1269, 1272 (4th Dist. 1998); Evans v.
City of Bakersfield, 22 Cal. App. 4th 321, 331 (5th Dist. 1994).
25  However, the standard requires that the defendant violated
clearly established federal law, not California state law.  See
26  Sharp, 871 F.3d at 909.  Plaintiff also cites Andrews v. City of
Henderson, Case No. 2:18-CV-1625 JCM (BNW), 2020 WL 5750434 at *1
27  (D. Nev. Sept. 25, 2020).  City of Henderson was decided after
the subject incident and thus could not have placed defendants on
28  notice that their conduct was illegal.

F.3d 839, 844–45 (9th Cir. 2007).  In Tekle, approximately
twenty-three armed officers saw a barefoot, eleven year old,
unarmed boy eleven year old boy exit the house where he lived
with his father, the suspect.  (See id. at 846.)  He did not
attempt to flee or resist officers, but complied with their
requests and laid face down on the driveway.  (See id.)  The
police then held a gun to his head, searched him, pulled him up
from behind by the chain of the handcuffs, and pointed their guns
on him for fifteen to twenty minutes.  (See id.)  Because the
facts of Tekle are completely distinguishable from the facts at
issue here and involved a totally different type of force, Tekle
could not have placed defendants on notice that their conduct in
this case was unlawful.

Plaintiff next cites Young v. County of Los Angeles,
655 F.3d 1156, 1166 (9th Cir. 2011).  In Young, the police
initiated a traffic stop for a seat belt violation.  See id. at
1158.  While the plaintiff sat on the sidewalk eating a snack and
waiting for a ticket to be written, the police officer proceeded
to pepper spray him and strike him multiple times with his baton.
See id. at 1160.  Again, because the facts of Young are wholly
distinguishable from the facts at issue here and involved a
totally different type of force, Young could not have placed
defendants on notice that their conduct here was unlawful.

Because plaintiff fails to identify sufficiently
specific constitutional precedents to alert the defendants that
their particular conduct was unlawful, defendants are entitled to

1   qualified immunity for the alleged unreasonable use of force.

2   Accordingly, the court will grant defendants summary judgment on

3   this claim.

4          4.   Unlawful Arrest

5          The cases cited by plaintiff do not support his

6   contention that the defendants violated clearly established law

7   when they arrested plaintiff for violating California Penal Code

8   §148.[6]  The only federal case cited by plaintiff in support of

9   his proposition is Velasquez v. City of Long Beach, 793 F.3d

10  1010, 1018–19 (9th Cir. 2015).  In Velasquez, Long Beach police

11  officers were responding to a noise complaint when an officer

12  decided to detain the plaintiff for refusing to comply with

13  orders, and brought the plaintiff to the ground when he felt him

14  "sort of pull away."  See id. at 1015.  When the plaintiff in

15  Velasquez allegedly refused to comply with defendant's orders to

16  roll on his stomach, the officer struck him eleven times with his

17  baton.  See id.  Plaintiff was then arrested for violation of

18  California Penal Code § 148(a)(1).  See id.  The district court

19  granted judgment as a matter of law on the unlawful arrest issue

20  under Federal Rule of Civil Procedure 50(a) to the City of Long

21  Beach.  See id. at 1017.  The Velasquez decision did not

22  establish that plaintiff was unlawfully arrested for violation of

23  _____

24        [6]   The majority of the cases cited by plaintiff are again
    state court cases interpreting state law.  See People v. Quiroga,
    16 Cal. App. 4th 961 (1st Dist. 1993); In re Muhammed, 95
25  Cal.App.4th 1325, 1329 (6th Dist. 2002); People v. Francis A. 40
    Cal.App.5th 399, 408 (1st Dist. 2019; People v. Allen, 109
26  Cal.App.3d 981, 987 (5th Dist. 1980).   However, as noted above,
    the standard requires that the defendant violated clearly
27  established federal law, not California state law.  See Sharp,
    871 F.3d at 909.

28
                                23

California Penal Code § 148; rather, the court held that the district court erred in granting judgment as a matter of law and remanded the case for a new trial.  See id. at 1030.  As such, Velasquez could not have placed defendants on notice that their conduct was illegal.

Because plaintiff fails to identify sufficiently specific constitutional precedents to alert defendants that their particular conduct in arresting plaintiff for violating California Penal Code § 148 was unlawful, the defendants are entitled to summary judgment on the allegedly unlawful arrest of plaintiff.  Accordingly, the court will grant defendants summary judgment on this claim.

C.   Claim Under 42 U.S.C. § 1983 for Malicious Prosecution

Plaintiff's second claim for relief alleges federal malicious prosecution under 42 U.S.C. § 1983.  (See Compl. ¶¶ 29-31.)  Under Ninth Circuit precedent, in order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."[7] Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed.  See Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1126-27 (9th

---

[7]   Although plaintiff alleges that defendants prosecuted him for the purpose of denying a specific constitutional right, plaintiff has not identified which specific constitutional right defendants prosecuted him to deny.

1  Cir. 2002).

2          "[T]he decision to file a criminal complaint is

3  presumed to result from an independent determination on the part

4  of the prosecutor, and thus, precludes liability for those who

5  participated in the investigation or filed a report that resulted

6  in the initiation of proceedings." Awabdy v. City of Adelanto,

7  368 F.3d 1062, 1067 (9th Cir. 2004).  However, the presumption of

8  prosecutorial independence does not bar a subsequent § 1983 claim

9  against state or local officials who improperly exerted pressure

10 on the prosecutor, knowingly provided misinformation to him,

11 concealed exculpatory evidence, or otherwise engaged in wrongful

12 or bad faith conduct that was actively instrumental in causing

13 the initiation of the proceedings.  Id.

14         If a plaintiff has evidence, for example, that the

15 district attorney was subjected to unreasonable pressure by the

16 police officers, that the officers knowingly withheld relevant

17 information with the intent to harm plaintiff, or that the

18 officers knowingly supplied false information, the plaintiff has

19 the burden to produce it.  See Smiddy v. Varney, 803 F.2d 1469,

20 1471–72 (9th Cir. 1986).  In addition, "an individual seeking to

21 bring a malicious prosecution claim must generally establish that

22 the prior proceedings terminated in such a manner as to indicate

23 his innocence.[8]  See Awabdy, 368 F.3d at 1068.  In the absence of

24 evidence to rebut the presumption, the presumption is sufficient

25 to require summary judgment for the defendant.  (Id.)

26         Plaintiff contends that the defendants induced the

27         [8]  It is undisputed that the District Attorney dismissed
   Plaintiff's criminal case after plaintiff prevailed on his Motion
28 to Suppress.  (See UMF 74–75.)

                              25

1    criminal prosecution by corruption, fabricated evidence, and

2    suppression of exculpatory evidence.  (See Pl.'s Opp'n to Mot.

3    for Summ. J. at 38.)   Plaintiff cites two examples of this

4    alleged fabrication to rebut the presumption of independent

5    prosecutorial judgment.  (See Pl.'s Opp'n to Mot. for Summ. J. at

6    38-42.)  First, plaintiff points to Officer Medina and Officer

7    Wilson's vacillations as to where plaintiff was standing in their

8    reports, the motion to suppress hearing, and their depositions.

9    (Id. at 39.)  Plaintiff additionally contends that Officers

10   Wilson and Medina lied when they said they could smell alcohol

11   emanating from plaintiff because plaintiff had only consumed

12   three beers earlier in the evening, had eaten 6 tacos, and was

13   outside at least 10 feet away from the officers.  (Id. at 39-41.)

14   Plaintiff also points to the fact that Officer Watkins did not

15   state that he smelled alcohol on plaintiff and Sergeant Fernandez

16   did not state that plaintiff was slurring his words.  (Id. at

17   41.)

18         The Ninth Circuit has established what types of

19   evidence are required to overcome the presumption that a

20   prosecutor exercises independent judgment in deciding to file

21   charges.  See Newman v. County of Orange, 457 F.3d 991, 994 (9th

22   Cir. 2006).  In Barlow v. Ground, 992 F.2d 1132, 1137 (9th Cir.

23   1992), the Ninth Circuit held that a civil rights plaintiff had

24   produced sufficient evidence to overcome the Smiddy presumption

25   because the prosecutor relied solely on the arresting officer's

26   report which omitted critical information and an independent

27   witness corroborated at least part of the plaintiff's version of

28   events.  Id. at 1137.  However, the Ninth Circuit has made clear

1  that a plaintiff's account of the incident in question, by

2  itself, does not overcome the presumption of independent

3  judgment.  See Newman, 457 F.3d at 994.

4          The court is not convinced that the discrepancies

5  between the officer's reports cited by the plaintiff are

6  material.  The fact that officers may have forgotten exactly

7  where they were standing on the driveway when questioned at their

8  depositions, over a year after the subject incident, is not

9  "ample evidence from which a reasonable jury could conclude that

10 the arresting officers, through false statements and material

11 omissions in their reports, prevented the prosecutor from

12 exercising independent judgment."  See Newman, 457 F.3d at 996

13 (citing Barlow, 943 F.2d at 1137).  Nor does the fact that

14 certain officers did not smell alcohol or hear the plaintiff

15 slightly slurring words, establish that the other officers were

16 lying or that there were material omissions in the report.

17         After reviewing all the evidence in the record, the

18 court concludes that plaintiff has not provided evidence

19 sufficient to rebut the presumption of independent judgment and

20 survive summary judgment on his malicious prosecution claim.

21 Plaintiff has merely established that his account of the incident

22 in question conflicts with the account of the officers involved,

23 which does not suffice.  See Newman, 457 F.3d at 994.

24 Accordingly, the court will grant summary judgment on this claim

25 to defendants.

26     D.    State Law Claim Under Tom Bane Civil Rights Act

27         Plaintiff's sole remaining claim for relief is based on

28 the Tom Bane Civil Rights Act, California Civil Code § 52.1(c).

1   (See Compl. ¶¶ 32-24.)  Because the court will grant summary

2   judgment on plaintiff's only federal claims, the court no longer

3   has federal question jurisdiction.[9]

4          Federal courts have "supplemental jurisdiction over all

5   other claims that are so related to claims in the action within

6   such original jurisdiction that they form part of the same case

7   or controversy under Article III of the United States

8   Constitution." 28 U.S.C. § 1367(a).  But a district court "may

9   decline to exercise supplemental jurisdiction . . . [if] the

10  district court has dismissed all claims over which it has

11  original jurisdiction."  28 U.S.C. § 1367(c); see also Acri v.

12  Varian Assocs., Inc., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en

13  banc) (explaining that a district court may decide sua sponte to

14  decline to exercise supplemental jurisdiction).

15         The Supreme Court has stated that "in the usual case in

16  which all federal-law claims are eliminated before trial, the

17  balance of factors to be considered under the pendent

18  jurisdiction doctrine--judicial economy, convenience, fairness,

19  and comity--will point toward declining to exercise jurisdiction

20  over the remaining state-law claims." Carnegie-Mellon Univ. v.

21  Cohill, 484 U.S. 343, 350 n.7 (1988).

22         Here, comity weighs in favor of declining to exercise

23  supplemental jurisdiction over plaintiff's state law claim under

24  the Tom Bane Act.  The state courts are fully competent to

25  adjudicate such a claim.  Indeed, that Act raises complex

26  questions of state law as to what is required to establish a

27  _____

28         [9]   There is no suggestion that there is diversity
    jurisdiction in this case, and the court finds none.

28

1    "specific intent to violate the arrestee's right to freedom from

2    unreasonable seizure." <u>Reese v. Cty. of Sacramento</u>, 888 F.3d

3    1030, 1043 (9th Cir. 2018) (citing <u>Cornell v. City & Cty. of San</u>

4    <u>Francisco</u>, 17 Cal. App. 5th 766, 799, (2017)).[10]   Such questions

5    are better left to the California courts to resolve.

6            As for judicial economy, plaintiff's Tom Bane Act claim

7    has not been the subject of any significant litigation in this

8    case apart from being discussed briefly in the context of this

9    motion.  Judicial economy does not weigh in favor of exercising

10   supplemental jurisdiction.  And lastly, convenience and fairness

11   do not weigh in favor of exercising supplemental jurisdiction

12   over plaintiff's remaining state law claim.  The federal and

13   state fora are equally convenient for the parties.  There is no

14   reason to doubt that the state court will provide an equally fair

15   adjudication of the issues.  There is nothing to prevent

16   plaintiff from refiling his claims against the remaining

17   defendants in the state court,[11] and any additional cost or delay

18   resulting therefrom should be minimal.  Accordingly, the court

19           [10]   "The Bane Act's requirement that interference with
20   rights must be accomplished by threats, intimidation, or coercion
     has been the source of much debate and confusion." <u>Cornell</u>, 17
21   Cal. App. 5th at 801.  In <u>Chaudhry</u>, the Ninth Circuit found the
     Bane Act "does not require proof of discriminatory intent" and
22   "that a successful claim for excessive force under the Fourth
     Amendment provides the basis for a successful claim under §
23   52.1." <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1105 (9th
     Cir. 2014).  But in <u>Cornell</u>, the California Court of Appeal
24   clarified the Bane Act's requirements, finding specific intent
     was required to make out a claim.

25           [11]   "[T]he period of limitations for any claim asserted
     under [28 U.S.C. 1367(a)], and for any other claim in the same
26   action that is voluntarily dismissed at the same time as or after
     the dismissal of the claim under subsection (a), shall be tolled
27   while the claim is pending and for a period of 30 days after it
     is dismissed unless State law provides for a longer tolling
28   period." 28 U.S.C. § 1367(d).

                                    29

declines to exercise supplemental jurisdiction and will dismiss
plaintiff's remaining state law claim without prejudice to
refiling in state court.

IT IS THEREFORE ORDERED that the Defendants' Motion for
Summary Judgment (Docket No. 11) be, and the same hereby is,
GRANTED on all of plaintiff's federal claims.

IT IS FURTHER ORDERED that plaintiff's remaining claim
against defendants under California law is DISMISSED WITHOUT
PREJUDICE to refiling in state court.

The Clerk of Court is instructed to enter judgment
accordingly.

Dated:  February 10, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE